

**U. S. Department of Justice**

*United States Attorney*
*District of Nevada*

---

*Federal Building & U. S. Courthouse*
*300 Booth Street*
*Reno, Nevada 89509*

June 4, 1992

### MEMORANDUM OF PLEA NEGOTIATION

TO:     Honorable Edward C. Reed, Jr.
        Chief United States District Judge

FROM:   Brian L. Sullivan
        Asst. United States Attorney

SUBJECT: U.S. v. Morgan Villard McKee, Jr.
         CR-N-91-60-ECR

I.   PLEA NEGOTIATION

The defendant, MORGAN VILLARD McKEE, JR., is charged in a two-count Indictment filed June 25, 1991, with First Degree Murder, in violation of Title 18, United States Code, Sections 1111 and 1153 (Count One); and Assault with Intent to Commit Murder, in violation of Title 18, United States Code, Sections 113(a) (Count Two). The Government and the defendant have agreed to the following:

1. The defendant will plead guilty to a Superseding Information charging him with Second Degree Murder, in violation of Title 18, United States Code, Sections 1111 and 1153 (Count One), and Assault With Intent to Commit Murder, in violation of Title 18, United States Code, Sections 113(a) and 1153 (Count Two). The Government will move to dismiss the above-mentioned Indictment at the time of sentencing. This portion of the plea agreement is made pursuant to Rule 11(e)(1)(A) of the Federal Rules of Criminal Procedure.

2. The parties agree that the Base Offense Level for the offense set forth in Count One of the Superseding Information is a level 33 pursuant to U.S.S.G. §2A1.2(a).

3. The parties agree that the Base Offense Level for the offense set forth in Count Two of the Superseding Information

Page 2
June 4, 1992

is a level 22 pursuant to U.S.S.G. §2A2.1(a)(2). However, because the victim sustained serious bodily injury, the Base Offense Level would be increased by 2 levels from a level 22 to a level 24 pursuant to U.S.S.G. §2A2.1(b)(1)(B).

4. The parties agree that under the provisions of U.S.S.G. §3D1.2(d), these two offenses do not group. However, under the provisions of U.S.S.G. §3D1.4(c), there is no increase in the offense level because the offense in Count Two is 9 levels less serious than the offense level for Count One.

5. The parties agree to an upward departure from defendant's offense level of 33 to a level 41 in accordance with the provisions of U.S.S.G §5K2.2, 5K2.6 and 5K2.8. Defendant's offense level will be a level 41 and he will not receive any further reduction for Acceptance of Responsibility under U.S.S.G. §3E1.1(a). If the defendant were convicted of First Degree Murder, his offense level would be 43 and he would not be allowed a 2 level reduction for Acceptance of Responsibility. Accordingly, he would be subject to a term of life imprisonment with no parole. The intent of this stipulated upward departure to a level 41 is to allow, in effect, the defendant a 2 level reduction for Acceptance of Responsibility that would not be available to him if he were convicted of First Degree Murder. The facts that allow for such an upward departure are the fact that one victim was killed and the other seriously injured, the fact that a dangerous weapon was possessed and used in the commission of both offenses, the manner and extent to which the dangerous weapon was used during the offenses, and the fact that defendant's conduct was unusually heinous, cruel and brutal. Both parties will be free to argue for whatever sentence they deem appropriate within the Guideline range under level 41. This portion of the plea agreement is intended to be binding on the Court pursuant to Rule 11(e)(1)(C) of the Federal Rules of Criminal Procedure.

6. The parties acknowledge that the defendant has been convicted of a number of Tribal offenses. Pursuant to U.S.S.G. §4A1.2(i), Tribal Court sentences are usually not counted in computing defendant's Criminal History Category, but may be considered under U.S.S.G. §4A1.3 (Adequacy of Criminal History Category). The Government agrees that it will not seek any departure under that section. The parties agree that defendant's Criminal History Category shall be Criminal History Category I. This portion of the plea agreement is intended to be binding on the Court pursuant to Rule 11(e)(1)(C) of the Federal Rules of Criminal Procedure.

Page 3
June 4, 1992

      7.  The defendant hereby agrees to waive any right to raise and/or appeal any and all motions, defenses, probable cause determinations and objections which defendant has asserted or could assert to this prosecution or to the Clerk's entry of judgment against defendant and imposition of sentence upon defendant consistent with this agreement.  He further waives any right to raise, appeal, and/or file any post-conviction writs of habeas corpus concerning any and all motions, defenses, hearings, probable cause determinations and objections which he has asserted or could assert to this prosecution of the Court's entry of judgment upon defendant consistent with this agreement.

II.      <u>PENALTIES</u>

A.  <u>Statutory</u>

    1.  <u>Second Degree Murder</u>

      Title 18, United States Code, Section 1111(a) provides for a penalty of imprisonment of any term of years or for life.

      Under the provisions of Title 18, United States Code, Section 3571(b)(3), defendant could be fined up to $250,000.

    2.  <u>Assault With Intent to Commit Murder</u>

      Title 18, United States Code, Section 113(a) provides for a penalty of imprisonment of not more than 20 years.  Further, under the provisions of Title 18, United States Code, Section 3571(b)(3), defendant could be fined up to $250,000.

B.  <u>Sentencing Guidelines</u>

      Pursuant to Title 18, United States Code, Section 3551, the Sentencing Reform Act, and Title 18, United States Code App. 4, the Sentencing Guidelines, the possible range of months of imprisonment for these offenses runs from 324 months for an Offense Level 41 with a Criminal History Category I to life for an Offense Level 41 with a Criminal History Category VI.

      Since the minimum term is more than 10 months, probation is not available and defendant must be sentenced to a term of imprisonment only.  U.S.S.G. §5C1.1(f).

      A federal prison sentence can no longer be shortened by early release on parole, because parole has been abolished.  However, under U.S.S.G. §5D1.1(a), a term of Supervised Release following a term of imprisonment is required when the term of imprisonment is more than 1 year.  Under Title 18, United States Code, Section 3559(a)(1), the crime set forth in Count One of the

Page 4
June 4, 1992

Superseding Information is a Class A felony and, therefore, pursuant to U.S.S.G. §5D1.2(b)(1), a term of Supervised Release of at least 3, but not more than 5, years must be ordered.

Under the provisions of U.S.S.G. §5E1.2(a), the Court is required to impose a fine unless the defendant establishes that he is unable to pay and is not likely to become able to pay any fine. Under U.S.S.G. §5E1.2(c), the minimum fine ranges from $25,000 to a maximum fine of $250,000.

In addition to the fine mentioned above, U.S.S.G. §5E1.2(i) requires the Court to impose an additional fine amount that is at least sufficient to pay costs to the Government of any imprisonment, probation, or Supervised Release ordered. However, U.S.S.G. §5E1.2(f) allows the Court to lower or waive any fine, impose an alternative sanction, such as community service, if the defendant establishes that he does not have the ability to pay a fine.

Title 18, United States Code, Section 3663 and U.S.S.G. §5E1.1 permit restitution as deemed appropriate by the Court.

Under Title 18, United States Code, Section 3013(a)(2)(A), the Court is required to impose a special assessment in the amount of $50.00 for each offense, or a total of $100. This special assessment shall be collected in the same manner that fines are collected in criminal cases.

III.     ESSENTIAL ELEMENTS OF THE OFFENSES

Before a verdict of guilty can be found, the Government would have to prove the following elements of each offense beyond a reasonable doubt, as follows:

1.  Second Degree Murder

    First:   The act or acts of killing of human being unlawfully;

    Second:  Doing such act or acts with malice aforethought;

    Third:   That the defendant was an Indian; and

    Fourth:  That the acts occurred within Indian Country.

2.  Assault With Intent to Commit Murder

    First:   That defendant assaulted Nathaniel Smart with an ax, as charged in Count

Page 5
June 4, 1992

>           Two of the the Superseding Information;
>           and
>
> Second:   That the defendant intended to murder
>           Nathaniel Smart during the perpetration
>           of said assault;
>
> Third:    That the defendant was an Indian; and
>
> Fourth:   That the acts occurred within Indian
>           Country.

IV.    FACTUAL STATEMENT RELEVANT TO SENTENCING

During the early evening hours of June 9, 1991, the defendant and his brother, Larson McKee, were present at the rodeo grounds located on the Ft. McDermitt Paiute/Shoshone Indian Reservation. The two brothers and other residents of the Reservation who were also present had been drinking. During this period of time, Nathaniel Smart and Larson McKee confronted one another. Larson McKee stated something like "Let's go, let's go, you want to fight", and he and Nathaniel Smart walked into the rodeo arena. Adrian Smart walked inside and took off his hat and glasses. Everyone was yelling, shouting and pointing at each other. Finally, Larson McKee got into his vehicle and left the area with his brother, the defendant, and stated that he would be back with help.

The McKee brothers returned to Larson McKee's residence and Morgan McKee picked up a small ax from a woodpile near the residence. He placed the ax inside the car and his brother, Larson, and another brother, Nelson McKee, returned to the rodeo grounds later on that evening. After their return to the rodeo area, Larson McKee became involved in a verbal altercation with Adrian Smart. While they were arguing with each other and preparing to fight, the defendant removed the ax from his vehicle and walked up behind Adrian Smart and struck him in the head with the ax. After Adrian Smart fell to the ground, the defendant then struck Adrian Smart in the face at least two or three times with the blade of the ax.

The defendant then ran after and chased Nathaniel Smart through the rodeo grounds, screaming "I'm going to mess you up and kill you." While jumping over a fence to get out of the rodeo grounds, the defendant hit Nathaniel Smart on the wrist with the ax. Mr. Smart then ran through the sagebrush and hid for 10 to 15 minutes and then walked to his grandmother's house. Mr. Smart's grandmother found him collapsed near the front gate of the main entrance to her residence and noticed that he was injured on his arm and had lost a lot of blood.

Page 6
June 4, 1992

     Mr. Smart was taken to the Emergency Room in Winnemucca, Nevada, where it was determined that he had lost a substantial amount of blood because one of his arteries had been severed. Physicians determined that he had two severed tendons and one broken bone in his wrist. The physicians characterized this injury as "serious bodily injury" and stated that if he had been left unattended, he could have died from the loss of blood. To date, Mr. Smart still suffers from pain due to this injury.

     Adrian Smart died at the rodeo grounds. A subsequent autopsy performed by the Washoe County Coroner/Medical Examiner showed that Adrian Smart's cause of death was due to multiple head and neck injuries secondary to massive chopping wounds.

     Defendant is an enrolled Indian with the Ft. McDermitt Paiute/Shoshone Indian Reservation.

V.    <u>STATEMENT OF THE DEFENDANT:</u>

     I, MORGAN VILLARD McKEE, JR., hereby acknowledge that I have thoroughly read and reviewed this memorandum with my attorney and agree this memorandum completely and accurately states the facts supporting my plea of guilty and the negotiations between myself, my attorney, and the United States Attorney's Office. I have discussed the contents of this memorandum with my attorney and they have been explained to my satisfaction.

     I have explained the facts and circumstances surrounding this case completely to my attorney, and have been advised what legal courses of action I may take. These discussions have included what might happen if I go to trial, what evidence the Government has against me and the possible defenses, if any, I may have to these criminal charges.

     My attorney has not promised me anything not mentioned in this plea memorandum, and, in particular, my attorney has not promised that I will get any specific sentence. I understand that any discussions with my attorney about the possible sentence I might receive from the Court are just predictions and are not binding on the Court. I know I cannot withdraw my guilty plea because my attorney's sentencing predictions turn out wrong.

     My attorney has also explained to me my Constitutional rights, including my right to a jury trial, to confront my accusers, to call witnesses on my own behalf, and my right to remain silent. My attorney has further explained to me that I have to waive these rights, that is, give them up, in order to have my guilty plea accepted by the Court.

     I understand that the United States Attorney's Office

Page 7
June 4, 1992

will fully inform the Court and the United States Probation Office of the nature, scope, and extent of my conduct regarding the facts and circumstances of the charges against me, and any and all related matters in aggravation or mitigation concerning the issue of my sentencing.

I know if the Government is making a non-binding recommendation as to what type of sentence I should receive, the Court does not have to follow that recommendation. I also understand that I cannot withdraw my guilty plea because the Court decides not to follow the non-binding sentencing recommendation of the Government.

I further understand that the matter of sentencing is entirely up to the Court. Any stipulations or agreements between myself, my attorney, and the United States Attorney's Office are not binding upon the Court, except as set forth specifically in the plea memorandum. I know that the Court will decide my sentence based upon the facts of this case, my personal background and the Sentencing Guidelines. I fully understand that my sentence could be anywhere within the range set forth in Section II of this memorandum.

_____    6/5/92
MORGAN VILLARD McKEE, JR.           Date

_____    6/5/92
LAWRENCE J. SEMENZA                 Date
Counsel for defendant

APPROVED BY:

_____    6-5-92
BRIAN L. SULLIVAN                   Date
Asst. United States Attorney
Attorney in Charge
Reno Office